UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JOVAN WILLIAMS,

                Plaintiff,

v.                                              Case No. 19-cv-1699-pp

KRISTIN J. JENSEN, JOHN DOE,
SUE PETER, LUTSEY,
GARY MAIER, JOHN KIND,
JAMES A. ELSINGER, RYAN BAUMANN,
STEVE SCHUELER, SCOTT ECKTEIN,
LT. KOEHLER, and RAYMOND A. KOELLER,

                Defendants.

---

## ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT (DKT. NO. 7) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A

---

      Plaintiff Jovan Williams, who is confined at Waupun Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and his motion to amend his complaint, dkt. no. 7, and screens his complaint, dkt. no. 1.

### I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When

1

funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On November 19, 2019, the court found that the plaintiff has neither the assets or means to pay an initial partial filing fee. Dkt. No. 5 at 2. The court gave the plaintiff until December 10, 2019 to inform the court if he wanted to voluntarily dismiss his case to avoid the risk of incurring a strike. The plaintiff did not respond. He has, however, filed a motion for leave to amend the complaint, and twice has asked the court to screen the complaint, so the court assumes that he has chosen to proceed. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee. He must pay the $350 filing fee over time in the manner explained at the end of this order.

**II.    Screening the Complaint**

    A.    Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to

relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds their complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The plaintiff explains that, on May 13, 2017, he was in segregation at Green Bay Correctional Institution. Dkt. No. 1 at ¶15; ¶¶2-13. The plaintiff says that sometime after 10 p.m., he stopped defendant John Doe in front of his cell. Id. The plaintiff asserts that he showed John Doe a handful of pills and a sharp paperclip and told him that he intended to overdose on the pills. Id. According to the plaintiff, John Doe said okay and walked away. Id.

Shortly after John Doe left, defendant Kristin Jensen allegedly entered the wing to do a wellness check. Id. at ¶16. The plaintiff asserts that he stopped her and told her he was about to overdose with the "tranzondone" pills.

Id. According to the plaintiff, Jensen watched as he counted nineteen pills, moving the pills from one hand to the other. Id. The plaintiff asked Jensen if she saw the pills, and she said yes. Id. According to the plaintiff, he then grabbed a carton of milk filled with water and started swallowing the pills one by one. Id. Jensen allegedly shrugged, told the plaintiff she was tired of him bugging her anyway, and walked off to finish her wellness check. Id. The plaintiff says he yelled after her, "If I live through this, I will be writing you up and file a lawsuit on you." Id.

The plaintiff asserts that he started to feel dizzy and confused, began to sweat and tremble, felt nauseous and vomited. Id. at ¶17. The plaintiff states that he pushed his emergency call button to alert staff, notified other inmates and yelled for help. Id. Defendant Raymond Koeller allegedly arrived at the plaintiff's cell and asked him what the problem was. Id. The plaintiff alleges that he told Koeller what had happened. Id. According to the plaintiff, neither Doe nor Jensen contacted their supervisors or did anything to stop the plaintiff from harming himself as is required policy. Id.

The plaintiff explains that he was transported to St. Vincent Hospital for treatment. Id. at ¶18. The plaintiff later was discharged to Green Bay, where Dr. Samantha Swartz-Oscar and Lieutenant Wickman (who are not defendants) allegedly placed him in clinical observation. Id. The plaintiff asserts that psychological services determined that the reason for his placement in observation was "Dangerous to Self, date of placement 5/14/17." Id.

The plaintiff alleges that the next day, May 15, 2017, he filed an inmate complaint about this incident. Id. at ¶19. According to the plaintiff, the following day, Jensen wrote him a conduct report for damage or alteration of property. Id. The plaintiff asserts that Jensen was trying to get him punished,

but the conduct report was dismissed (he does not state by whom). Id. The plaintiff further asserts that, on May 21, 2017, Jensen argued with him and told him she would write him a conduct report for misusing medication and that she'd make sure he was found guilty. Id. The plaintiff received a conduct report for misuse of medication the next day (the court assumes Jensen wrote the conduct report, but the plaintiff does not expressly state that). Id.

The plaintiff explains that, on June 1, defendant James Elsinger presided over a due process hearing on the conduct report. Id. at ¶20. The plaintiff asserts that Elsinger did not follow Department of Adult Institutions (DAI) Policy 303.00.04(3)(c), which prohibits finding inmates guilty of misusing medication when they engage in self-harm. Id. The plaintiff says that Elsinger gave him ninety days of disciplinary separation and fourteen days loss of outside recreation. Id. The plaintiff alleges that defendant Ryan Baumann approved the disposition; the plaintiff appealed the decision to defendant Scott Eckstein. Id.

According to the plaintiff, Eckstein denied the plaintiff's appeal. Id. at ¶21. The plaintiff asserts that he challenged the decision through all steps of the grievance process. Id. The plaintiff alleges that someone (it is not clear who) remanded the decision for a new hearing. Id. The plaintiff explains that he had a new hearing on August 31, 2017. Id. The hearing was before defendant Lt. Koehler, who, according to the plaintiff, disregarded the same policy and gave the plaintiff a consecutive disposition of ninety days' disciplinary separation and fourteen days' loss of recreation. The plaintiff asserts that Koehler said to him, "I waited until the last day of your disposition to have your hearing to make sure you do all the time over again for taking us through this process again [for] the same conduct report." Id. The plaintiff states that Eckstein

5

denied his appeal, but Brian Foster (who is not a defendant) overturned the decision on February 14, 2019. Id.

The plaintiff alleges that defendant John Kind was not supposed to process the conduct report at all. Id. at ¶22. Construing the plaintiff's allegations broadly, the court understands the plaintiff to mean that Kind, who is the security director, should not have approved the issuance of Jensen's conduct report. The plaintiff also alleges that Koeller wrote an "IR" (which the court understands is an incident report) to cover up for Jensen, but the plaintiff provides no details about Koeller's report or how the report allegedly covered up for Jensen. Id.

Finally, the plaintiff alleges that "as a result," defendants Sue Peter, Lutsey and Gary Maier discontinued all medications for his back pain, neck pain, waist pain, migraine headaches and psychiatric conditions. Id. at ¶23. The plaintiff explains that stopping these medications cold turkey left him in agony for a long time. Id.

    C.    Analysis

        1.    *Deliberate Indifference to Threats of Overdose*

The danger from which the plaintiff alleges John Doe and Jensen failed to protect him was the danger he posed to himself. He alleges that they ignored his threats to overdose—threats on which he made good—resulting in his having to go to the hospital for treatment.

The Eighth Amendment prohibits "cruel and unusual punishments" and "imposes a duty on prison officials to take reasonable measures to guarantee an inmate's safety and to ensure that inmates receive adequate care." Phillips v. Diedrick, No. 18-C-56, 2019 WL 318403 at *2 (E.D. Wis. Jan. 24, 2019) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)). While a prison official's

6

deliberate indifference to a prisoner's substantial risk of serious harm violates the Eighth Amendment, not every claim by a prisoner that he did not receive adequate care will succeed. Id. (citing Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)). To prevail on such a claim, a plaintiff will have to provide evidence showing that "(1) his medical need was objectively serious, and (2) the defendant[] consciously disregarded this need." Berry v. Lutsey, 780 F. App'x 365, 368-69 (7th Cir. 2019) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

Prison staff have a duty to prevent inmates from causing serious harm to themselves. Pittman ex rel. Hamilton v. Cty. of Madison, 746 F.3d 766, 775-76 (7th Cir. 2014). Before an official will be liable for ignoring a risk of self-harm, however, the "risk of future harm must be sure or very likely to give rise to sufficiently imminent dangers." Davis-Clair v. Turck, 714 Fed. App'x 605, 606 (7th Cir. 2018) (internal quotation marks omitted). The question of when that risk of future harm becomes "sure or very likely to give rise to sufficiently imminent dangers" depends on the circumstances of the case. See, *e.g.*, Freeman v. Berge, 441 F.3d 543, 546-47 (7th Cir. 2006) (explaining that "at some point," to ensure a prisoner is not "seriously endangering his health," prison officials would have a duty and right to step in and force a prisoner on a hunger strike to take nourishment); see also Davis v. Gee, No. 14-cv-617, 2017 WL 2880869 at *3-4 (W.D. Wis. July 6, 2017) (holding that to show a constitutional injury, the harm must present an objectively, sufficiently serious risk of serious damage to future health; swallowing a handful of Tylenol fails to do that).

In Phillips, U.S. District Judge William Griesbach opined that

> [t]he rule holding prison officials liable for the deliberately self-destructive acts of a sane inmate is inconsistent with the basic

7

> principle of American jurisprudence that "absent serious mental illness or other form of incapacity, a person has free will and is therefore responsible for his own intentional acts. . . ." It also empowers inmates to use the threat of self-harm to manipulate corrections staff and may encourage the very behavior the rule is intended to prevent.

2019 WL 318403 at *3 (internal citations omitted).

At this early stage, without more detailed information, the court will allow the plaintiff to proceed on a deliberate-indifference claim against John Doe and Jensen based on his allegations that, despite him showing them the pills that he intended to swallow (and, in the case of Jensen, swallowing the pills in front of her), they walked away without attempting to stop him or without contacting someone else to help. That does not mean that the court agrees that these defendants were deliberately indifferent, and it does not prevent the defendants from moving for dismissal if they believe the plaintiff threatened or attempted self-harm for manipulative purposes.

### 2. *Due Process Related to Conduct Report for Misusing Medication*

The plaintiff alleges that Elsinger and Koehler (the hearing officers) violated his right to due process when they found him guilty of the conduct report despite a DAI policy prohibiting a finding of guilt for inmates who misuse medication to self-harm; and that Baumann and Eckstein violated his right to due process when they denied his appeal and affirmed the hearing officers' decisions. The court will not allow the plaintiff to proceed against these defendants.

It is doubtful that the plaintiff has a constitutionally protected liberty interest in avoiding 180 days of disciplinary separation (the two, consecutive ninety-day punishments he received after twice being found guilty of the conduct report). Without a liberty interest, the protections offered by the Due

8

Case 2:19-cv-01699-PP-WED   Filed 07/02/20   Page 8 of 17   Document 12

Process Clause do not come in to play. The Seventh Circuit has explained that, in cases involving a period of punitive segregation of that length, no liberty interest is at stake when the conditions of the confinement are not unusually harsh relative to the conditions in general population. Singh v. Gagare, 651 Fed. App'x 551, 555 (7th Cir. 2016) (citations omitted).

The plaintiff has not provided the court with sufficient details regarding the conditions of his confinement during his stay in segregation, but even if the plaintiff's time in segregation had been long enough and the conditions sufficiently severe to trigger protection under the Due Process Clause, the only reasonable inference the court can draw from the plaintiff's allegations is that he received all the protections the Due Process Clause requires.

"In this context, due process requires that [a prisoner] receive advance written notice of the charges, the chance to present testimony and documentary evidence to an impartial decisionmaker, and a written explanation, supported by at least 'some evidence' in the record, for any disciplinary action taken." Lagerstrom v. Kingston, 463 F.3d 621, 625 (7th Cir. 2006) (citations omitted). The court infers from the plaintiff's allegations that he received the necessary procedural protections and that there was "some evidence" to find him guilty of misusing medication. He concedes that he received a conduct report (that is, notice of the charges), two hearings and two written decisions following the hearings (which he appealed). As to whether there was some evidence to support a finding of guilt, he admits that he swallowed more than the prescribed amount of medication.

The plaintiff points to the fact that DAI Policy 303.00.04(3)(c) prohibits DOC staff from writing a conduct report "for behavior directly related to self-harm or self-harm attempts as determined by PSU (e.g., . . . misuse of

9

medication)." See https://doc.wi.gov/DepartmentPoliciesDAI/3030004.pdf. This policy, however—which requires that the PSU (Psychiatric Services Unit) make a finding that an inmate's misuse of medication was an act of self-harm—does not help the plaintiff. First, the plaintiff does not allege that the PSU made any such finding. He alleges that the PSU placed him in observation because he was a danger to himself, but it is unclear whether the standard for placing someone in observation is the same as the standard for determining that someone misused medication as a genuine act of self-harm rather than as a way of manipulating staff or getting attention.

Even if the PSU *had* made such a finding, a prison official's "failure to conform with the procedural requirements guaranteed by state law does not by itself constitute a violation of federal due process." Martin v. Shwano-Gresham School Dist., 295 F.3d 701, 706 (7th Cir. 2008). In other words, the fact that Elsinger and Koehler may have ignored state-law policy requirements when they found the plaintiff guilty of misusing medication is irrelevant to the court's determination of whether the plaintiff received the protections federal due process requires.

Even assuming the protection of the Due Process Clause was triggered, the plaintiff received all the process he was due. See Singh, 651 Fed. App'x at 555-56 (highlighting that the principle fault in the plaintiff's claim was that he wasn't complaining about being deprived of due process but that he was merely disagreeing with the outcome of the hearing).

    3.    *Retaliation*

To state a First Amendment retaliation claim, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and

10

Case 2:19-cv-01699-PP-WED   Filed 07/02/20   Page 10 of 17   Document 12

(3) the First Amendment activity was 'at least a motivating factor' in the [d]efendants' decision to take the retaliatory action." Gomez v. Randle, 680 F.3d 859, 866 (7th Cir. 2012) (citations omitted).

The court will allow the plaintiff to proceed on a retaliation claim against Jensen based on his allegations that she wrote a conduct report after he filed an inmate grievance complaining about her failure to stop him from swallowing the pills. The court also will allow the plaintiff to proceed on a retaliation claim against Koehler based on his allegations that he delayed the plaintiff's disciplinary hearing to maximize the plaintiff's time in segregation after the plaintiff prevailed on his appeal of the prior disciplinary hearing's outcome.

4. *Deliberate Indifference to Serious Medical Conditions*

"[T]he Eighth Amendment, as the Supreme Court has interpreted it, protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." Gabb v. Wexford Health Sources, Inc., No. 18-2351, 2019 WL 2498640, at *3 (7th Cir. June 17, 2019) (quoting Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). The court uses a two-part test to evaluate whether medical care amounts to cruel and unusual punishment; it asks: 1) "whether a plaintiff suffered from an objectively serious medical condition" and 2) "whether the individual defendant was deliberately indifferent to that condition." Id. (quoting Petties v. Carter, 836 F.3d 722, 727-28 (7th Cir. 2016) (en banc)).

The court will allow the plaintiff to proceed on a deliberate-indifference claim against defendants Peter, Lutsey and Maier based on his allegations that, following the determination that he had misused his medication, they

11

discontinued his medications for his many ailments "cold-turkey," leaving him in agony.

### 5. *The Remaining Defendants*

The court will not allow the plaintiff to proceed against Kind. The plaintiff vaguely alleges that Kind should not have approved Jensen's conduct report. The plaintiff does not include factual allegations to support that claim. For example, the plaintiff has not alleged that Kind was aware that Jensen allegedly wrote the conduct report as a way of retaliating against him. The only reasonable inference is that Kind agreed with Jensen that the plaintiff had misused his medication. His agreement with her decision did not violate the Constitution, and he cannot be liable for Jensen's alleged retaliation if he did not know about it. See Williams v. Shah, 927 F.3d 476, 482 (7th Cir. 2019).

The court also will not allow the plaintiff to proceed against Koeller. The plaintiff alleges that Koeller responded to the plaintiff pressing his emergency call button after he swallowed the pills and that the plaintiff was then transported to the hospital for treatment. Nothing in that interaction suggests that Koeller violated the plaintiff's rights. The plaintiff also alleges that Koeller wrote an incident report to cover for Jensen. The plaintiff includes no factual allegations to explain what he means, so this allegation is too vague to state a claim. To the extent the plaintiff is alleging that Koeller wrote a false incident report and that the report was used in the disciplinary hearing, "the protection from such arbitrary action is found in the procedures mandated by due process," which the plaintiff received. Lagerstrom v. Kingston, 463 F.3d 621, 625 (7th Cir. 2006).

The court also will dismiss Steve Schueler. Although the plaintiff names him as a defendant in the caption of his complaint, he does not set forth any

12

allegations against Schueler in the body of his complaint. The plaintiff fails to state a claim against him because he has not alleged what Schueler did or did not do to violate the plaintiff's constitutional rights.

## III. Motion to Amend the Complaint

About a month after the plaintiff filed his complaint, he filed a "Motion for Leave to File an Amended Complaint." Dkt. No. 7. The plaintiff seeks to add the St. Vincent Hospital Medical Staff as a defendant. Id. The plaintiff's proposed amended complaint does not reproduce the allegations from his original complaint; it sets forth three additional paragraphs that the plaintiff would like to add to his original complaint.

Civil Local Rule 15(a) (E.D. Wis.) states that, "Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended, and may not incorporate any prior pleading by reference." The plaintiff's proposed amended complaint does not comply with the court's local rule, so the court will deny the motion.

Even if the plaintiff had complied with Civil L. R. 15, the court would have denied his motion as futile because he fails to state a claim based on the allegations in his proposed amended complaint. The plaintiff alleges that, after he was taken to the hospital, medical staff did an EKG and a urine drug screen. Dkt. No. 7-1 at 1. The plaintiff explains that staff had to use a catheter because he was unable to urinate on his own. Id. According to the plaintiff, the procedure was very painful, but he did not object to the treatment. Id. The plaintiff explains that medical staff tested only for tramadol, aspirin and acetaminophen, not for trazodone. Id. After the screen came back negative, medical staff recommended that he follow up with his primary care provider and have a psychiatric evaluation. Id.

13

The plaintiff alleges that medical staff did not screen him for trazodone and did not administer charcoal liquid because they did not want to treat him for his overdose. Id. at 2. He also asserts that they falsified his medical records. Id. The plaintiff alleges that staff treated him like a nuisance. Id.

St. Vincent Hospital is not a state actor. Section 1983 allows a plaintiff to sue someone who violates his constitutional rights while acting "under color" of state law—in other words, someone who is employed by the state. The staff of St. Vincent Hospital are not employed by the state. Even if the St. Vincent staff were state actors, the Eighth Amendment "is not coterminous with a medical malpractice claim," which is a fancy way of saying that "[o]rdinary malpractice does not rise to the level of an Eighth Amendment claim." Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir. 1997); Gulley v. Ghosh, 864 F. Supp. 2d 725, 729 (7th Cir. 2012). The plaintiff insists that he should have received a certain type of treatment, but the Eighth Amendment does give him that right. See Gulley, 864 F. Supp. 2d at 729 ("whether one course of treatment is preferable to another [is] beyond the [Eighth] Amendment's purview"). The court would not have allowed the plaintiff to amend the complaint to add the St. Vincent staff even if he had complied with the court's local rule.

### IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES** the plaintiff's motion for leave to file an amended complaint. Dkt. No. 7.

The court **DISMISSES** defendants John Kind, James A. Elisinger, Ryan Baumann, Steve Schueler, Scott Eckstein and Raymond Koeller.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendants Jensen, Lutsey, Maier and Koehler. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within 60 days.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the complaint and this order on defendant Sue Peter under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** defendant Sue Peter to file a responsive pleading to the complaint.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that the agency that has custody of the plaintiff shall collect from his institution trust account the $350 filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the

15

account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

or other information not being timely delivered, which could affect the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 2nd day of July, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**