UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOVAN WILLIAMS,

        Plaintiff,

    v.                                          Case No. 19-cv-1699-bhl

KRISTIN J. JENSEN, et al.,

        Defendants.

---

## DECISION AND ORDER

---

      Plaintiff Jovan Williams, who is serving a state prison sentence at the Waupun Correctional Institution and is representing himself, filed this action pursuant to 42 U.S.C. §1983, alleging that his civil rights were violated.  On July 2, 2020, the Court screened his complaint and allowed Williams to pursue some of his allegations, including First Amendment retaliation claims against Defendants Kristen Jensen and James Koehler and Eighth Amendment deliberate indifference claims against Defendants Susan Peters, Jean Lutsey, and Gary Maier. Dkt. No. 12.  Williams' retaliation claim against Jensen is based on allegations that she wrote a conduct report against him after he filed an inmate complaint against her for failing to stop him from overdosing on pills.  Dkt. No. 12 at 10-11.  Williams' retaliation claim against Koehler is based on allegations that Koehler delayed a disciplinary hearing to maximize the amount of time Williams would spend in segregation.  *Id.*  Williams' deliberate indifference claims against Peters, Lutsey, and Maier are based on allegations that they discontinued Williams' medications "cold-turkey" and refused to provide him with alternative treatments.  Id. at 11-12; Dkt. No. 1 at ¶23.

      On January 4, 2021, Peters, Jensen, Koehler, Lutsey, and Maier filed motions for complete or partial summary judgment on the ground that Williams failed to exhaust his available administrative remedies.  Dkt. Nos. 44, 47.  Jensen, Koehler, Lutsey, and Maier (the State Defendants) are represented by separate counsel and filed their motion for partial summary judgment separately.  Dkt. No. 47.  Contrary to Civil L.R. 56(b)(1)(C), neither summary judgment motion included a separate statement of proposed material facts as to which the moving party

contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law. While this failure would be sufficient grounds for the outright denial of the motions—an outcome the Court will entertain in the future—for purposes of the present motions, the Court will exercise its discretion and address both motions on their merits. Based on the record, the Court will grant in part and deny in part Defendants' summary judgment motions. More specifically, the record shows Williams failed to exhaust his administrative remedies before filing the retaliation claims against Jensen and Koehler and those claims will be dismissed. But the record does not support the conclusion that he failed to exhaust administrative remedies on his deliberate indifference claims, which shall therefore remain pending.

## BACKGROUND

On May 18, 2017, the institution complaint examiner's (ICE) office acknowledged complaint GBCI-2017-12870, in which Williams complained that Jensen had failed to protect him from himself, which resulted in him having to be sent to the emergency room. Dkt. No. 49 at 1. The inmate complaint was dismissed that same day, and Williams timely appealed. *Id.* Williams' appeal was dismissed on June 8, 2017. *Id.*

A few days after Williams submitted his inmate complaint, on May 21, 2017, Jensen wrote Williams a conduct report for misusing medication. Dkt. No. 49 at 1. Williams was found guilty of the conduct report on June 1, 2017; he appealed the decision a week later, on June 8, 2017, and the warden affirmed the decision and discipline a week after that, on June 14, 2017. *Id.* Less than two weeks later, the ICE's office received inmate complaint GBCI-2017-16289 from Williams, in which he challenged the conduct report on the basis that the hearing officer had failed to consider his defense that his actions were beyond his control due to his mental health issues. *Id.* at 2-3. Williams also claimed that the hearing officer should have obtained input from psychological services. *Id.* at 3. Following an investigation, the warden dismissed the inmate complaint on June 27, 2017. *Id.* Williams timely appealed, and on August 15, 2017, the Office of the Secretary remanded the conduct report for a rehearing to include input from psychological services. *Id.* Psychological services did not identify any mitigating factors and found Williams guilty of misusing medication. *Id.* It is not clear why, but about a year and a half later, on February 14, 2019, the warden dismissed the conduct report. *Id.*

On July 5, 2017 (about a month and a half after Williams received the conduct report for misusing medication), the ICE office received inmate complaint GBCI-2017-17202, in which

Williams complained that he was being denied medical treatment after his medications had been discontinued. Dkt. No. 49 at 4; Dkt. No. 48-6 at 11. After an investigation, the reviewing authority dismissed the inmate complaint on July 20, 2017. Dkt. No. 49 at 4. Williams timely appealed; his appeal was dismissed on August 16, 2017. *Id.*

On July 7, 2017 (the day after his inmate complaint about the denial of treatment after discontinuation of his medications), the ICE office acknowledged inmate complaint GBCI-2017-17312, in which Williams complained he was being denied medical care and treatment for his folliculitis and chronic pain and headaches. Dkt. No. 49 at 4. After an investigation, the reviewing authority dismissed Williams' inmate complaint on July 19, 2017. *Id.* at 5. Williams timely appealed, and the appeal was dismissed on August 23, 2017. *Id.*

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

The Prison Litigation Reform Act (PLRA) applies to this case because Williams was a prisoner when he filed his complaint. The PLRA provides that an inmate cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(1). According to the U.S. Supreme Court, exhaustion of administrative remedies

3

must be done "properly" because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

To properly exhaust available administrative remedies, prisoners must file their inmate complaints and appeals in the place, at the time, and in the manner that the institution's administrative rules require. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Wisconsin's administrative procedures for inmate complaints are outlined in Wis. Admin. Code ch. DOC 310.[1] Under §310.09(1)(e), an inmate complaint must "[c]ontain only one issue per complaint, and shall clearly identify the issue." Further, under §310.09(6), an inmate must "file a complaint within 14 calendar days after the occurrence giving rise to the complaint, except that the institution complaint examiner may accept a late complaint for good cause."

A prisoner is not required to exhaust the administrative remedies if those remedies are not "available." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Administrative remedies will be deemed "unavailable" when prison officials do not respond to a properly-filed inmate complaint or when they prevent a prisoner from exhausting through affirmative misconduct, such as denying a prisoner necessary forms, destroying a prisoner's submissions, or requiring steps not mandated by regulation or rule. *See Smith v. Buss*, 364 F. App'x 253, 255 (7th Cir. 2010); *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008); *Kaba*, 458 F.3d at 684; *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004); *Strong v. David*, 297 F.3d 646, 649-50 (7th Cir. 2002).

## A. Williams Failed to Exhaust his Administrative Remedies Before Filing his First Amendment Claims Against Jensen and Koehler.

Jensen and Koehler both argue that Williams failed to exhaust his administrative remedies before suing them for alleged retaliation. They claim Williams failed to file an inmate complaint alleging retaliation and likewise failed to raise retaliation as a defense to his conduct report. In response, Williams asserts that the administrative remedies were unavailable to him or that he filed complaints for which he has no record. Williams' responses are insufficient to avoid summary judgment.

---

[1] Chapter 310 was revised in 2018. Although little changed substantively, the numbering of the sections changed. The Court cites to the 2014 version, which was in place at the time of Williams' inmate complaints.

4

**1. The Record Shows Williams Did Not Exhaust his Retaliation Claim Against Jensen.**

With respect to Jensen, Williams states that he filed an inmate complaint on June 16, 2017, complaining that Jensen had retaliated against him, but he never received a receipt from the ICE. Dkt. No. 54 at 2. He also claims that he submitted a second grievance (he does not say when) raising the same complaint, but this one also went unacknowledged. *Id.* Williams says he sent an information request asking why he never received a receipt for his first inmate complaint, but that also went answered. *Id.* Tellingly, Williams does not provide copies of either inmate complaint that he allegedly submitted, nor does he provide a copy of the information request he allegedly submitted.

With regard to Koehler, Williams asserts that he submitted an information request after his disciplinary rehearing asking how to complain about Koehler's retaliatory conduct, but he received no response. *Id.* at 3. As such, Williams says he did not know what to do. Williams does not provide a copy of the request he says he submitted. Finally, he asserts that, on February 13, 2019, he submitted a memorandum to the warden complaining about both Jensen and Koehler. *Id.*; Dkt. No. 53-1. The warden dismissed the conduct report the next day. *Id.* Copies of his memorandum and the warden's response are the only materials Williams submits in support of his response.

Williams' unsupported statements are not sufficient to create a genuine dispute over whether he exhausted the administrative remedies before suing Jensen for retaliation. Williams' vague assertions about the inmate complaints he allegedly filed and about his alleged follow-up information request are not enough to show exhaustion. He provides few details about the contents of these alleged submissions and fails to provide the Court with copies of the alleged submissions. According to Williams' Inmate Complaint History Report, supplied by the State Defendants, there is no record of Williams' submitting the inmate complaints or information request he says he submitted. It is worth noting that Williams managed to successfully submit six other administrative complaints during June 2017, *see* Dkt. No. 57 at 5, so his representations that the two inmate complaints raising Jensen's retaliation mysteriously disappeared seems rather far-fetched.

Further, as the Seventh Circuit has recently acknowledged, Wisconsin has a system in place that mandates prisoners receive a receipt for an inmate complaint. *See Lockett v. Bonson*, 937 F.3d

5

1016, 1026 (7th Cir. 2019). Prisoners are "obliged to regard the absence of receipt as a red flag" and they should undertake, "through the complaint procedure, an inquiry to ascertain why [they did] not receive[] this important document." *Id.* at 1027. As the Seventh Circuit noted, a prisoner who fails to make such an inquiry, may not counter evidence that the prison did not receive an inmate grievance "with a bald assertion of a timely filing." *Id.* Williams asserts only that he filed an information request about the missing receipt, not that he raised the issue "through the complaint procedure." As such, his bald assertion that he filed an inmate complaint is insufficient to create a genuine dispute.

In any event, even if Williams' story were true, by his own account, he would have failed to exhaust the administrative remedies in a timely fashion. The record shows that Jensen wrote the conduct report on May 21, 2017. Dkt. No. 48-4 at 14-15. Under §310.09(6), an inmate must file a complaint within fourteen calendar days after the occurrence giving rise to the complaint. Williams says he filed his first inmate complaint complaining about Jensen's alleged retaliation on June 16, 2017, *twenty-six days* after she wrote the conduct report. Thus, even if Williams filed the inmate complaint when he says he did, he failed to comply with the administrative rules' requirements. Accordingly, Jensen is entitled to summary judgment on Williams' retaliation claim against her.

### 2. Williams Also Failed to Exhaust His Retaliation Claim Against Koehler.

Williams concedes he never submitted an inmate complaint about Koehler's alleged retaliatory conduct. He asserts only that, a year and a half after his second disciplinary hearing on the conduct report, he wrote a letter to the warden asserting that Koehler had waited until the last day of his disposition to have the second hearing to make sure Williams had to redo his time in segregation. This letter is insufficient for exhaustion purposes in that it does not comply with the administrative rules' requirements—it is neither timely nor in the proper form. Accordingly, Williams failed to exhaust the administrative remedies as to this claim, and Koehler is entitled to summary judgment.

### B. Williams Has Adequately Exhausted his Administrative Remedies on his Eighth Amendment Claims against Peters, Lutsey, and Maier.

Peters, Lutsey, and Maier also seek summary judgment on failure to exhaust theories. Peters asserts that Williams never filed an inmate complaint about her allegedly discontinuing his medications all at once for misuse and leaving him in pain and agony. Dkt. No. 45 at 5-6. Similarly, Lutsey and Maier assert that Williams failed to exhaust the administrative remedies with regard to his claim against them because (1) he filed his inmate complaints about not receiving treatment for his painful medical conditions more than fourteen days after his medications were discontinued and (2) the inmate complaints about his requests for medication do not address the allegations of withdrawal on which this Court allowed him to proceed. These arguments fail because they are based on an overly narrow and constrained reading of Williams' complaint.

In inmate complaint GBCI-2017-17202, Williams identified the one issue of his inmate complaint as "Challenges denial discontinuation of my medical treatment & care." Dkt. No. 48-6 at 11. In providing details about the issue, Williams explained that he had been diagnosed with several mental health conditions for which he was prescribed medication. He stated that he was currently being deprived all medical care and treatment. He also explained that "for months" he had been "trying to reason with health services staff prior to filing th[e] complaint to resolve this issue" but health services and his psychiatrist were unwilling to reconsider the decision to discontinue his medication. *Id.* at 11-12. Similarly, in inmate complaint GBCI-2017-17312, Williams identified the one issue of his inmate complaint as "Challenges denial discontinuation of my medical treatment & care." Dkt. no. 48-7 at 11. He explained that he had been diagnosed with folliculitis and chronic pain and headaches, for which he had been prescribed different medications. He further explained that he was currently being deprived all medical care and treatment and that health services was unwilling to reconsider its decision to discontinue his medication. *Id.*

Fairly read, these inmate complaints were sufficient to alert prison officials to the existence of the problem and afford them an opportunity to repair the alleged injury that is at issue in this lawsuit. This is all that was required. *See Lockett v. Bonson*, 937 F.3d 1016, 1027 (7th Cir. 2019).

Defendants lean heavily on the fact that Williams' medications were discontinued more than fourteen days before he filed his inmate complaints. However, by doing so, Defendants misstate the nature of Williams' claims against them. Williams is not challenging the decision to discontinue his medication. Instead, he complains that, after that decision was made, health services provided no alternative treatments to help him deal with the symptoms and pain associated

7

with the conditions for which he had been taking the medications. *See* Dkt. No. 1 at ¶23. He says their failure to do so left him in pain for a long time. This alleged injury—the lack of alternative treatments and/or the refusal to reconsider the decision to discontinue his medication—was ongoing. *See Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001) (explaining that "[e]very day that they prolonged his agony by not treating his painful condition marked a fresh infliction of punishment"). This is precisely how the ICE interpreted Williams' inmate complaints. In summarizing inmate complaint GBCI-2017-17202, the ICE began by stating, "Inmate Williams complains he is being denied medical treatment through the discontinuance of his medications." Dkt. No. 48-6 at 2. Again, Williams is not challenging the decision itself, but rather health services' refusal to address the aftereffects of that decision.

In summary, Williams explains in his inmate complaints that he had been trying for a long time to convince health services to reinstate his medications or give him other treatments. When his efforts to convince them failed, he filed inmate complaints asserting that he was suffering and his painful conditions were being disregarded.[2] Given that these are the very claims Williams asserts in this case, the Court finds that he exhausted the administrative remedies before he initiated this lawsuit.

Defendants' remaining arguments are also without merit. Peters asserts that Williams never mentions her specifically in his inmate complaints. As Williams point out, this assertion is incorrect. *See* Dkt. No. 48-7 at 11 ("I have been and is currently being deprived all medical care & treatment for my current medical condition and all available alternatives by Sue Peter[s], Agency Practitioner."). But, even if Williams had not mentioned any of these Defendants by name, failing to do so would not lead to the conclusion that he had failed to exhaust the administrative remedies. *See Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). Williams' inmate complaints "served [their] function by providing prison officials a fair opportunity to address his complaint[s]." *Id.* Again, that is all that is required.

Finally, Lutsey and Maier's assertion that neither of Williams' complaints "addresses the specific allegations (that he experienced withdrawal after his medication was discontinued 'cold turkey') on which Williams was allowed to proceed in this lawsuit" also is without merit. While

---

[2] The Court is not making a determination on the merits of Williams' claims. The only issue currently before the Court is whether Williams exhausted the available administrative remedies before he initiated his lawsuit.

Williams' use of the phrase "cold turkey" in his complaint could lead to the conclusion that he was complaining about withdrawal symptoms, read in context and construed liberally, it is equally plausible that Williams simply meant that his medications were canceled abruptly. The crux of his claims is not that he suffered withdrawal symptoms; it is that after his medications were abruptly discontinued, Defendants were deliberately indifferent to his pain and suffering when they failed to provide him with alternative medications or treatments for his various conditions. Time will tell if Williams can prove his claims.

Because Williams exhausted the available administrative remedies for his Eighth Amendment claims against Peters, Lutsey, and Maier, the Court will deny their motions for summary judgment on exhaustion grounds.

## CONCLUSION

For these reasons, **IT IS ORDERED** Defendant Susan Peters' motion for summary judgment on exhaustion grounds (Dkt. No. 44) is **DENIED**; the State Defendants' motion for summary judgment on exhaustion grounds (Dkt. No. 47) is **GRANTED in part** and **DENIED in part**; Williams' retaliation claims against Jensen and Koehler are **DISMISSED without prejudice** based on Williams' failure to exhaust the administrative remedies; and Koehler is **DISMISSED** as a defendant. Finally, the Court lifts the stay currently in place and sets a discovery deadline of **May 26, 2021**, and a dispositive motion deadline of **June 28, 2021**.

Dated at Milwaukee, Wisconsin this 3rd day of March, 2021.

s/ *Brett H. Ludwig*
Brett H. Ludwig
United States District Judge

9